**TEAMSTERS' STEELHAULERS LOCAL UNION NO. 800 a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Plaintiff,**

v.

**ARTIM TRANSPORTATION SYSTEMS, INC., Defendant.**

Civ. A. No. 82–837.

United States District Court, W.D. Pennsylvania.

Jan. 21, 1983.

---

Robert Coopes, Southfield, Mich., for defendant.

Ernest Orsatti, Pittsburgh, Pa., for plaintiff.

## OPINION

WEBER, District Judge.

This matter is before the court on plaintiffs' motion for summary judgment.

The plaintiff is a union and alleges that the defendant was a party to a collective bargaining agreement known as the "National Master Freight Agreement and Eastern Conference Iron and Steel Rider and Teamsters Joint Council No. 40 Supplement". ("National Agreement", or "Agreement"). This Agreement covered the period April 1, 1979 to March 31, 1982. The defendant denies being a party to the Agreement and accordingly has refused to pay to plaintiff's members certain sick leave pay accrued before March 31, 1982. The plaintiff presented a grievance on May 12, 1982 because of this refusal and prevailed before the Western Pennsylvania Teamsters and Employees Joint Area Committee Steel Sub-Committee. The defendant failed to attend this arbitration. Following the defendant's failure to comply with the decision of the Joint Grievance Committee, the plaintiff sought a preliminary injunction in this court. An evidentiary hearing was held on September 24, 1982 to hear testimony concerning plaintiff's allegation that defendant was a party to the collective bargaining agreement. The need for the preliminary injunction sought by the plaintiff was removed through a stipulation of counsel entered into on the record at the evidentiary hearing that an escrow account would be established to cover the amount of the claimed sick pay.

The court is asked by virtue of plaintiff's supplemental complaint filed September 24, 1982 to enforce the May 13, 1982 and June 10, 1982 decisions of the Western Pennsylvania Teamsters and Employees Joint Area Committee Steel Sub-Committee and order the defendant to comply in the payment of sick days pay up to March 31, 1982 to all effected employees.

The issue before the court is whether defendant's status vis a vis the collective bargaining agreement can be decided as a matter of law on the basis of undisputed facts. The facts are deduced from the evidentiary hearing and the supporting material provided by counsel.

The National Master Freight Agreement and Eastern Conference Area Iron and Steel Rider for the period April 1, 1979 through March 31, 1982 comprises the purported collective bargaining agreement between the parties. This venerable accord is negotiated on the one hand by the Teamsters and the Eastern Conference Area Steel Haulers' Negotiating Committee and, on the other hand, by the Negotiating Committee for the Trucking Management, Inc.

and certain other Associations and Employers including the Eastern Motor Carriers Employers Conference, Inc. and the National Steel Carrier's Association.

The plaintiff, Teamsters Steelhaulers Local Union No. 800, is part of the Eastern Conference and is the recognized bargaining agent for Truckers at the defendant's company. The defendant, Artim Transportation System, Inc. is a member of the National Steel Carrier's Association and, in fact, is represented in this matter by the managing director and counsel of the National Association.

At the outset, there is no writing which would show the plaintiff and defendant as signatories to a collective bargaining agreement. Given the nature of modern labor relations and the wide use of industry wide master agreements, we do not find the absence of a written contract between the parties to be particularly fatal to plaintiff's claim. The court does note, however, that the agreements appear to contemplate the attachment of the signatures of the local unions and their respective employers.

Defendant, however, denies the existence of an agreement with the plaintiff. The defendant maintains, through the supporting affidavit of its counsel, first, that the defendant never engaged in collective bargaining with the plaintiff; second, that the defendant is not a party to and never executed the "National Motor (sic) Freight Agreement"; and third, that the defendant is not bound by the Agreement. We note that in framing its response the defendant has sedulously avoided a discussion of the relationship it enjoys with the National Steel Carriers' Association and the legal consequences of that relationship in light of the National Association's accord with the Teamsters and Eastern Conference by virtue of the National Master Freight Agreement. Accordingly, the court could accept defendant's first and second contentions yet reject the third and find as a matter of law that the defendant is bound by the Agreement. We feel that based on the record and the undisputed facts set forth below such a finding is appropriate. The plaintiff is entitled to judgment in its favor as a matter of law.

The record convincingly reveals that the National Master Freight Agreement guided the relationship between these parties. The plaintiff has proffered numerous exhibits which indicate that the grievance procedure of the National Master Freight Agreement was employed by the parties and honored by the defendant in the processing of grievances. Other evidence indicates that the defendant used the terms of the Agreement to assure the prompt return to work of laid-off employees. Additional evidence indicates that the Agreement was frequently referenced by company officials in guiding their handling of a variety of grievances as well as cargo damage claims where they invoked specific provisions of the Agreement.

The provisions of the National Master Freight Agreement which the plaintiff relies upon for the payment of sick pay is Article 38, Section 1, which provides in relevant part:

Sick leave not used by March 31 of any contract year will be paid on March 31 at the applicable hourly rate in existence on that date. Each day of sick leave will be paid for on the basis of eight (8) hours straight time pay at the applicable hourly rate.

(Article 38, section 1, page 88 of the National Master Freight Agreement and Eastern Conference Area Iron and Steel Rider For the Period April 1, 1979 to March 31, 1982.)

The evidence reveals that the defendant paid employees for unused sick days in accordance with the Agreement for the contract years 1979–80, 1980–81 but discontinued the practice for the contract year 1981–82. (*See also* plaintiff's Exhibits 14, 15).

The evidence indicates that the defendant took disciplinary actions under the National Master Freight Agreement. In so doing the defendant relied upon specific provisions set forth in the Agreement. For example, in recalling laid-off workers, the defendant made use of the following form letter in 1981 and 1982:

This letter will confirm our telephone conversation to you advising that you are being recalled from lay-off status effective January 5, 1982. Your failure to return to work within ten (10) working days will result in the loss of all seniority rights as per the National Master Freight Agreement-Iron Steel and Special Commodity Rider. (See Exhibits 21, 22, 26, 27, 28).

These letters were signed variously by the defendant's Vice-President-Road Operations, Director of Personnel and Labor Relations, and Operation Control Manager. The operative provision governing seniority in the event of lay-off is actually found in the superceding language of the Eastern Conference Area Iron and Steel Rider attached to the National Master Freight Agreement and incorporating the latter by reference. It provides in relevant part:

Seniority shall be broken only by discharge, voluntary quit or more than a three (3) year layoff or for such greater period than three (3) years as a change of Operations Committee may direct during the third (3rd) year of a change of operations as provided in Article 8, section 6, of the National Agreement. In the event of a layoff, an employee so laid off shall be given ten (10) working days notice of recall mailed to the last known address. In the event the employee fails to make himself available for work at the end of said ten (10) working days, he shall lose all seniority rights under this Rider.

(Article 43, section 1, Eastern Conference Area Iron and Steel Rider For the Period April 1, 1979 to March 31, 1982).

The Manager of Safety and Claims and the claims supervisor for the defendant relied upon provisions in the National Agreement in handling potential claims to cargo. Plaintiff provides evidence from two occasions in 1981 where notices were sent to drivers who had handled damaged cargo. The letters are identical in warning the drivers that they may be held liable for any claims. The letters state, in part:

In accordance with Article 10 of the Labor Agreement, Artim Transportation System, Inc., is hereby informing you that if a claim results from the incident you may be liable for the amount claimed. (See Plaintiff's Exhibits 24, 25).

The National Agreement provides the following at Article 10:

Employees shall not be charged for loss or damage unless clear proof of gross negligence is shown. This Article is not to be construed as permitting charges for loss or damage to equipment under any circumstances. No deduction of any kind shall be made without a hearing with the Local Union.

(Article 10, section 1, National Agreement).

It is clear from the record developed at the evidentiary hearing that the defendant consistently made use in 1980, 1981 and 1982 of the grievance procedure established by the National Agreement at Articles 7 and 8, and the Eastern Conference Rider at Articles 44 and 45. The grievance procedure was structured so as to give effect and assure enforcement of the remaining provisions of the National Agreement and the Eastern Conference Rider. (See plaintiff's exhibits 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16). Moreover, adherence to this general grievance structure required the defendant's adherence to the jurisdiction and decisions of the Western Pennsylvania Teamsters Employees Joint Area Committee Steel Sub-Committee (Joint Area Committee). It is a decision of the Joint Area Committee respecting the entitlement to sick pay that the plaintiff now seeks to enforce. Finally, the defendant specifically referenced the National Agreement when it notified Roy Williams, Chairman of the Teamsters on September 21, 1981 that it no longer intended to abide by the terms of the Agreement. (See plaintiff's Exhibit 33). The defendant also attributes its inability to continue operations to the National Agreement in another letter dated March 15, 1982 to Chairman Williams, from the "Acting President" of Artim, John M. "Jack" McMahon, which states:

Please be advised that Artim Transportation System Inc. is closing down its opera-

tions as of March 31, 1982. This decision was made due to our inability to live with the National Master Freight Agreement and the riders thereto. (See plaintiff's Exhibit 34).

Plaintiff in order to prevail in a motion for summary judgment must demonstrate on the basis of undisputed facts that the defendant is bound by the terms of the National Agreement and accordingly the decisions of the Joint Area Committee. Plaintiff must demonstrate either that the defendant was a signatory and is therefore bound as a matter of law to its agreement with Local Union 800, or that the defendant has acted in such a way as to adopt the contract as its own such that it is now estopped as a matter of law from challenging the enforceability of the Agreement against it.

Plaintiff relies in part upon grievance forms filed before the Eastern Conference Joint Area Committee in 1980, 1981 and 1982 which recite over the signature of defendant's Manager of Operations, the following:

We, the undersigned, parties to the National Master Freight Agreement and the Iron and Steel Supplemental Agreement, hereby agree to submit the dispute to arbitration under the Rules of Procedure prescribed by the Eastern Conference Joint Area Committee, by virtue of its authority, as set forth in Article     and     of the Iron and Steel Supplemental Agreement, the following: Competitive Review.

The undersigned further agree that a majority decision of the Eastern Conference Joint Area Committee in the above dispute will be final, conclusive and binding with no appeal and, further, that neither party will attempt through any overt acts to void the decision rendered.

The undersigned also agree that failure to comply with the decision of a majority of the Committee within ten (10) days of the date of the decision will result in the loss of all contract rights, privileges and benefits due them under Article     of the Iron and Steel Supplemental Agreement. (See plaintiff's Exhibit 5).

Plaintiff has not produced evidence sufficient for this court to find as a matter of law that defendant is bound by the terms of the contract because it was a signatory to the contract.

The court, however, finds that defendant is bound by the terms of the contract since it adhered to the agreement, adopting its provisions to obtain the benefit of the Agreement between the parties. The dispute between the parties, to the extent it involves the question of whether the defendant is bound by the terms of the Agreement, can be resolved as a matter of law if the defendant is precluded from challenging the validity of the collective bargaining agreement. We find that the defendant is now estopped from challenging the agreement and that the plaintiff is entitled to summary judgment.

Estoppel is based upon the acceptance and retention of benefits under the terms of an agreement that a party could have otherwise rejected. *See* 28 Am.Jur.2d *Estoppel and Waiver,* § 59 (1966). This theory, in the absence of fraud, is correlative to the principles of election or ratification. *Id.* It is clear from the undisputed facts that the defendant readily, knowingly, and consistently accepted the benefits of the purported collective bargaining agreement. The defendant used the Agreement to protect its rights in the processing of potential damage claims to cargo as referred to above, and the Agreement was also used to articulate the company's position with regard to the return of laid-off employees. Furthermore, the defendant, without fail, adhered to the grievance procedure and the arbitration authority set out with specificity by the terms of the collective bargaining agreement it now seeks to contest. The court has already referred to Plaintiff's exhibits 33 and 34 which demonstrate its prior adherence to the National Agreement through letters to Teamster Chairman Roy Williams.

Reference to the theory of estoppel in the labor relations context is not without precedent. In *Lewis v. Cable,* 107 F.Supp. 196

(W.D.Pa.1952), the court held that an operator-employer's subjective intent vis a vis an agreement to share coal production royalties with a mine worker's welfare fund was not material where the mine operators had acted in such a way as to induce employees and the union to believe that a contract existed. The mine operator in *Lewis* had challenged the authority of the operator's association to execute an agreement on behalf of the operator with the union. The mine operator, however, made the payments pursuant to an agreement between the operator's association and the union in order to circumvent strikes and avoid other repercussions. The court held that the operator was now estopped from denying the association's authority to act on behalf of the operator. The court characterized the operator's conduct as follows:

> Obviously the course of action was taken to insure continual production at defendant's mines by inducing the employees and their union to believe that defendant had a contract with the union... As a result, the employees and their union did not undertake to enter into a separate contract with defendant although they have the right to insist that defendant bargain collectively. Defendant's action and declarations caused the employees and their union to forego this valid right of labor. If we were to sustain defendant's contention, the employees and their union would be prejudiced after they had relied on the only reasonable inference to be drawn from defendant's course of conduct. Thus, the elements of estoppel are present. (107 F.Supp. at 198).

Similarly, in *Lewis v. Kerns,* 175 F.Supp. 115 (S.D.Ind.1959), the employer-defendants sought to challenge the validity of a collective bargaining agreement on the grounds that they entered into the agreement under duress. The court noted that there were no disputed issues of fact and that the defendants admitted operating under the agreement for a period of three years. Moreover, at no time did the defendants challenge the validity of the agreement. The court held that the defendants had ratified the contract by their actions and in failing to rescind over a three year period were estopped from challenging the validity of the agreement. 175 F.Supp. at 119. *See also, Lewis v. Gilchrist,* 198 F.Supp. 239 (N.D.Ala.1961).

Accordingly, we find that the defendant cannot by its acts give the impression it intends to be bound by an agreement, for purposes of assuring that employees will return from lay-off status promptly and be liable for damaged cargo or otherwise cause employees to adhere to a grievance mechanism and then when liability under the agreement for sick pay is asserted, seek to repudiate the agreement. *Lewis v. Cable,* 107 F.Supp. 196, 197–198 (W.D.Pa.1952). Accordingly, insomuch as the defendant is estopped from challenging the validity of an agreement it heretofore assented to, we find that the defendant is bound by the terms of the contract, including Article 38 respecting sick pay.

Finally, the court has authority to enforce Committee decisions pursuant to a collective bargaining agreement under Section 301 of the Labor-Management Relations Act of 1947. *See General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Riss & Co.,* 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963).

Wherefore, the court having determined that no material issue of fact is in dispute as to defendant's acceptance of the terms of the Agreement and that the defendant is estopped from challenging the validity of the agreement it will order that the decision of the Joint Area Committee be enforced. The plaintiff's Motion for Summary Judgment will be granted.

## ORDER

AND NOW this 21st day of January 1983, SUMMARY JUDGMENT is GRANTED for the PLAINTIFF and the Order of the Western Pennsylvania Teamsters and Employees Joint Area Grievance Committee Steel Sub-Committee is AFFIRMED and is hereby ENTERED as the JUDGMENT of this court.