**UNITED PAPERWORKERS INTERNATIONAL UNION, AFL–CIO, CLC & its Local No. 200, Plaintiffs–Appellees,**

v.

**WELLS BADGER INDUSTRIES, INC., Defendant–Appellant.**

No. 87–1352.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 25, 1987.

Decided Dec. 10, 1987.

---

Danuta Bembenista Panich, Mayer Brown & Platt, Chicago, Ill., for defendant-appellant.

Gerry M. Miller, Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, Milwaukee, Wis., for plaintiffs-appellees.

Before FLAUM, MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Wells Badger Industries ("Wells Badger") appeals the district court's grant of summary judgment ordering Wells Badger to arbitrate a dispute with its employee union, United Paperworkers International. The dispute between the parties arose because the company refused to arbitrate its dismissal of an employee, Donald Terpstra, who had been discharged after the collective bargaining agreement between the parties had expired. In this appeal, the company claims a factual dispute exists regarding the parties' intention to arbitrate post-contract disputes. The company contends further that it should have been granted summary judgment because no presumption of arbitrability applies here. Although we conclude that the district court was clearly erroneous in finding that the company had continued to arbitrate grievances even after the collective bargaining agreement expired, this does not affect our decision, and we affirm the district court.

I

Wells Badger had a collective bargaining agreement with the United Paperworkers International Union ("Union") which expired on January 1, 1985. However, by the terms of the agreement, the contract would extend past its stated termination date until notice was given by one party to the other. Wells Badger duly notified the Union on February 1 of its intention to terminate the agreement as of February 11, 1985. The parties sought to renegotiate their contract, but came to impasse by February 14. As a result, the company circulated a memo dated February 14 which informed employees that the company would unilaterally implement changes in "wages, hours and working conditions" based upon its final offer to the Union during the negotiations. In response to employee inquiries, the company circulated a follow-up memo on February 19 which emphasized that "[w]ith the exception of the modifications communicated ... by memo dated February 14, 1985, the Wages/Benefits, Hours of Work and Work Rules will remain the same as they were prior to February 14, 1985." Throughout the negotiations, the arbitration provision was never at issue, and in fact, the company had selected an arbitrator and agreed on an arbitration date for the Terpstra dismissal dispute. After further bargaining, the parties came to an agreement which was

ratified by the Union on June 7, 1985, but which the Union had refused to sign because the company had unilaterally changed a holiday pay provision without discussing the change with the Union.

Terpstra, a member of the Union at the time of his discharge, was dismissed on September 24, 1985. The company discharged him on the basis of its new attendance policy, which it had implemented after the 1982–85 contract expired. The Union contends that either the new collective bargaining agreement became effective as of June 7, the date that the Union ratified it, or that an interim agreement existed because of the memoranda circulated by the company in February. The Union notes that Wells Badger disclaimed its obligation to arbitrate only after the National Labor Relations Board had ruled that, as to the agreement ratified June 7, there was not a "meeting of the minds" on the holiday pay provision. Under either contention, the Union argues that the company should have brought the Terpstra grievance to arbitration.

The company refutes these allegations by arguing that a contract did not exist at the time that the Terpstra grievance arose. The Union had not signed the new collective bargaining agreement at the time of Terpstra's discharge. Moreover, the company argues that an interim agreement did not exist either, since its memo of February 14 merely fulfilled the company's legal obligation to maintain the terms and conditions of its work arrangement with its employees. Finally, the company argues that although it *processed* employee grievances after the 1985 agreement had expired, it had not *arbitrated* those grievances. The company admits its legal obligation to process those grievances, but argues that arbitration is a separate, contractual duty.

The district court had original jurisdiction of this action under 28 U.S.C. § 1331, and the Labor–Management Relations Act § 301(a), 29 U.S.C. § 185(a) (1982). In its order, the district court supported its grant of summary judgment by pointing out the strong national policy in favor of arbitration, and in finding that the parties had intended to arbitrate employee grievances even after the collective bargaining agreement had expired.

## II

Wells Badger contends that a genuine issue of material fact exists as to whether the parties intended to arbitrate post-contract grievances. The company's memos of February 14 and February 19 indicate that it intended to extend the terms of the 1982–85 contract, and that the conditions outlined in the memos merely highlighted provisions where changes would be implemented. The memo of February 14 did not purport to cover all of the company's obligations, but merely "highlight[ed] certain changes in wages, hours and working conditions based upon the final offer made during negotiations." The arbitration clause of the 1982–85 contract was never mentioned in the memo, and throughout the negotiations for the new contract, the parties never disputed that the arbitration provision would be continued.

The company's own actions during the hiatus between contracts belie its claim. Not only did the company join the union in selecting an arbitrator, but it also agreed to a date for arbitrating the Terpstra grievance. The only time that the company indicated that it would disclaim its obligation occurred after the Regional Director of the National Labor Relations Board rendered its decision regarding the June 1985 agreement. When the Regional Director determined that no "meeting of the minds" had occurred over the holiday pay provision in the new contract, the company interpreted that to mean that the entire contract was ineffective as well. Wells Badger claims that it made a "mistake" and had only agreed to arbitration because it had assumed that the June 1985 agreement was binding. We believe that the company's memos and its actions in setting up the arbitration refute its disingenuous argument that it relied only on the June 1985 contract.

At this point, we are compelled to note that the intention of the parties under most circumstances must be determined on

the basis of an objective standard—the parties' manifested mutual assent. It is well established that for a collective bargaining agreement to be found, "[a]ll that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement." *Capitol–Husting Co. v. NLRB*, 671 F.2d 237 (7th Cir.1982) (citing *NLRB v. Haberman Constr. Co.*, 641 F.2d 351, 355–56 (5th Cir.1981)). *See also General Warehousemen and Employees Union v. J.C. Penney Co.*, 484 F.Supp. 130, 135 (W.D.Pa.1980) (stating that "manifested mutual assent rather than actual mental assent ... is the essential element" in determining whether a collective bargaining agreement exists). Here, the company issued its February 14 memo making certain specific changes in the terms and conditions of employment. This apparently created an atmosphere of confusion and misunderstanding among the employees which was conveyed to Wells Badger. In response to these concerns, the employer issued its February 19 memo which, in general terms, assured the employees that matters relating to their employment under the prior contract would continue unchanged except those specifically modified in the February 14 memo. Thus, the second memo was obviously intended to assure the employees that many areas of their employment relationship would continue as they had previously and it was upon this assurance that the employees reasonably relied and continued their employment. Whether this course of conduct is labeled an interim agreement or a continuation of many of the terms and conditions of the 1982–85 agreement is of little consequence. The assurance of the company and the reliance thereon by the employees is certainly sufficient under the facts and circumstances of this case upon which to determine objectively the intentions of the parties. *See Capitol–Husting Co.*, 671 F.2d at 243 (finding that the "Union acted reasonably in relying" on Capitol–Husting's offer to match financial package offered by rival company that the Union was also negotiating with, such that Capitol–Husting was acting in bad faith to claim that Union's failure to expressly accept this offer nullified its obligation to abide by the contract).

While we have concluded that the district court correctly determined the intention of the parties, we reject the Union's position that the company was bound to arbitrate under the agreement ratified June 7, 1985. It is well established that when two parties disagree over a major contract term, there is no agreement, or "meeting of the minds," and the agreement is not considered a valid contract. *See generally Interstate Indus., Inc. v. Barclay Indus., Inc.*, 540 F.2d 868, 870 (7th Cir.1976); *Charbonnages de France v. Smith*, 597 F.2d 406, 414–15 (4th Cir.1979). The Union and Wells Badger did not agree over the terms of the holiday pay provision. Thus, no new enforceable contract resulted under which Wells Badger could be held to arbitrate this grievance. The evidence supports the district court's finding that the parties did indeed contemplate that the original arbitration provision would extend beyond the expiration date of the contract.

In its order, the district court based part of its decision on its finding that the company had in fact already arbitrated three post-contract grievances before Terpstra filed his grievance. We disagree with that specific finding. On the record before us, it constitutes clear error. However, that finding was not required under the circumstances of this case to find that the parties intended to arbitrate.

The company contends that the fact that it continued to process grievances was not indicative of its intent to arbitrate. As to this narrow contention, we agree. The National Labor Relations Board has distinguished a company's legal obligation to process grievances from its contractual obligation to arbitrate. In its decision in *Vaughan & Sons, Inc. v. NLRB*, 281 NLRB No. 144 (1986), the National Labor Relations Board found that a company is legally obligated to *process* employee grievances after a collective bargaining agreement has expired, but that this obligation does not mean that the company must also *arbitrate* those grievances. "Upon the expiration of a collective-bar-

gaining [sic] agreement, either party is relieved of its duty to honor the binding arbitration clause ... with respect to disputes arising after expiration of the agreement. Neither party, however, is relieved of its duty to accept, consider, discuss, and otherwise meet and negotiate in an attempt to resolve grievances ..." *Id.* at 7. The Supreme Court has also recognized that the duty to arbitrate does not "arise[ ] solely by operation of law. The law compels a party to submit his grievance to arbitration only if he had contracted to do so." *Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). Again, in *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960), the Court stated that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit."

For the purposes of our analysis, it does not matter whether we treat the company's obligations as an extension of the 1982–85 agreement, or as an interim agreement as the Union claims. In either case, the arbitration provision was intended by both parties to carry over from the term of the original contract. The Union cites *Taft Broadcasting Co. v. NLRB*, 441 F.2d 1382 (8th Cir.1971), to support its contention that an interim agreement existed here. In *Taft*, the Eighth Circuit looked to the text and title of the arbitration provision in the collective bargaining agreement to determine that the company was bound to arbitrate post-contract grievances. The company had sent a letter to the union after the collective bargaining agreement between them had expired, explicitly stating that the conditions of employment and the grievance procedure would be handled according to the new drafted, but yet unsigned, agreement. The court rejected the company's claim that the letter could not be a binding contract without the union's formal acceptance, finding that the letter did not call for the union to make an affirmative response. Regardless of whether an interim agreement existed between Wells Badger and the Union, or whether the expired contract terms were merely extended, in either case the result would be the same. Wells Badger was bound to arbitrate this grievance.

The Union also asserts that its post-contract grievance must be arbitrated according to *Nolde Brothers, Inc. v. Local 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). We reject that contention, and under our holding today we need not consider it further.

Because we find that the arbitration provision of the expired collective bargaining agreement was implicitly extended past the expiration date of the agreement by the company's memos, and that the company itself acknowledged this obligation when it joined the Union in selecting an arbitrator and setting a date for arbitration, we find that no genuine issue of material fact exists as to the intent of the parties to arbitrate post-contract disputes.

The order of the district court granting summary judgment for the Union is therefore

AFFIRMED.