**EMPIRE EXCAVATING
COMPANY, Plaintiff,**

v.

**AMERICAN ARBITRATION ASSOCIA-
TION and International Union of Oper-
ating Engineers, Local 542, Defendants.**

Civ. No. 87–0941.

United States District Court,
M.D. Pennsylvania.

June 29, 1988.

---

**1558**

Charles F. Wilson, Scranton, Pa., for plaintiff.

Jonathan Walters, Philadelphia, Pa., for defendants.

### MEMORANDUM AND ORDER

NEALON, Chief Judge.

Currently before the court are cross-motions for summary judgment based on a stipulation of material facts. For the reasons that follow, the court will dismiss this action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).

### Background

Plaintiff Empire Excavating Company (Empire) is an employer within the meaning of section 2(2) of the National Labor Relations Act (NLRA) and section 301 of the Labor Management Relations Act (LMRA). *See* 29 U.S.C. sections 152(2), 185, respectively; *see also* document 26 of record, at para. 2. Defendant International Union of Operating Engineers, Local 542 (Local 542 or Union) is an employee organization within the meaning of section 2(5) of the NLRA, *see* 29 U.S.C. section 152(5), and section 301 of the LMRA. *See* document 26 of record, at para. 3. Local 542 represents employees in the construction industry, most of whom operate a variety of pieces of construction equipment. *See id.* at para. 7. Since September 1983, John Simonitis has headed Local 542's Wilkes-Barre office. *See id.* at para. 6.

Historically, Local 542 negotiated a standard collective bargaining agreement with a number of employer associations through Eastern Pennsylvania and Delaware. *See id.* at para. 9. Empire, however, was not a member of any employer association that was bound to any regional negotiations regarding this Master Agreement. Instead, Empire, through its president, Daniel Siniawa, negotiated individually with Local 542 a labor contract that covered May 1, 1981 through April 30, 1984. *See id.* at paras. 10–12. Siniawa, the only representative of Empire that negotiated labor contracts with the Union, signed that agreement as president of Empire. *See id.*

Prior to the expiration of the 1981–1984 contract, Siniawa orally advised Local 542 that Empire would not be bound by any Master Agreement subsequent to the expiration of the 1981–1984 contract. Because Siniawa had not provided written notice to the Union, as required under the 1981–1984 agreement, he was advised that the Union considered Empire bound by the Master Agreement. *See id.* at paras. 13–14 and Exhibit A. To avoid a labor dispute, Empire agreed to and signed an Agreement to run from May 1, 1984 to April 30, 1986. *See id.* at para. 15 and Exhibit B. That Agreement provided that it would remain in effect unless either party gave written notice 90 days prior to its expiration date. *See id.* at para. 16.

By letter dated January 9, 1986, Empire advised Local 542 that it would not be bound by the results of any employee association negotiations with the Union and that Empire desired to negotiate independently for a new agreement, with Daniel Siniawa to act as primary negotiator. *See id.* at para. 17 and Exhibit C. Thereafter, Local 542 negotiated a new Master Agreement with a number of employee associations that was to run from May 1, 1986 to April 30, 1988. *See id.* at para. 22. On July 20, 1986, November 20, 1986, November 25, 1986, and December 8, 1986, the Union met with Siniawa during which time the provisions of the new Master Agreement were discussed, along with the reasons Empire could not sign that Agreement, and the parties discussed and agreed to consider various alternate terms. On December 8, 1986, Empire was advised that

the Union was not agreeable to accepting anything other than the provisions contained in the Master Agreement that Empire refused to sign. *See id.* at para. 23. At all relevant times, however, Daniel Siniawa has offered to meet with the Union in an effort to negotiate a new contract. *See id.* at para. 37.

Subsequent to April 30, 1986, the date on which the previous Agreement expired, Empire continued to employ four to five union members that it had on its payroll for a number of years and occasionally sought additional employees from a union hiring hall operated by Local 542. The 1984–1986 Agreement and the 1986–1988 Master Agreement contained identical provisions regarding the obligation of an employer to seek employees initially through the hiring hall. In addition, Empire paid contributions to various fringe benefit funds, *e.g.*, pension, welfare, supplemental unemployment, and apprenticeship training funds, at the rate called for under the terms of the 1984–1986 Agreement—26.6% of gross wages—the same rate required in the 1986–1988 Master Agreement. *See id.* at paras. 24–28.[1]

In making contributions to the funds, Empire used monthly reporting forms supplied by the Union. These forms indicated, *inter alia*, the name of the employees, their social security number, their hours worked for the month, and their gross wages. *See id.* at para. 29 and Exhibit D. Empire also reported on the forms the amount of Union dues it continued to withhold from Union employee's paychecks and the amount of money contributed to the funds. Empire submitted the forms, along with checks to cover the fringe benefit contributions, from approximately June 28, 1986 through January 31, 1988. *See id.* at

para. 31 and Exhibits E–1—E–11. The forms were signed by the Office Manager of Empire, who in no instance was Daniel Siniawa and who was neither an officer, director, or shareholder of Empire. *See id.* at para. 31. Instead, the Office Manager performed purely administrative duties and had no authority from Empire to sign any contracts, including labor contracts, that would bind Empire. *See id.* at paras. 31, 33.[2]

The use of Union members, the filing of reports, and the payment of union dues and fund contributions were pursuant to the 1984–1986 Agreement, which Empire continued to maintain in a good faith gesture pending further negotiations with the Union for a new Agreement. *See id.* at para. 34. The 1986–1988 Master Agreement has not been signed by Daniel Siniawa or any other officer of Empire for the period of 1986–1988. Likewise, no individual collective bargaining agreement has been reached by the parties or signed by Daniel Siniawa or any other officer of Empire for the 1986–1988 period. *See id.* at paras. 35–36.

On February 13, 1987, the Union filed a demand for arbitration with the American Arbitration Association seeking increased wages, annuity fund benefits, and general conformance with the 1986–1988 Master Agreement. *See id.* at para. 38 and Exhibit G. Empire refused to participate in the selection of an arbitrator and filed suit in the Lackawanna County Court of Common Pleas on June 17, 1987 to enjoin the arbitration proceedings and to prevent the Union "from attempting in any way to enforce any rights between said Union and the Plaintiff subsequent to April 30, 1986, until such time as a legally binding contract is

---

1. Since May 1, 1986, the Union has forwarded annuity payment forms pursuant to the 1986–1988 Master Agreement to Empire, which Empire refused to complete, sign, and return on the ground that the annuity fund was not part of any prior contract. *See* document 26 of record, at para. 32.

2. As part of the Stipulation of Facts, the parties agreed that, if Empire were to present witnesses, such witnesses would testify that any individual who executed the reporting forms was not

authorized to bind Empire to a collective bargaining agreement and never intended to do so. *See* document 26 of record, at para. 41. Likewise, the witnesses of Local 542 would testify that, while they dealt exclusively with Daniel Siniawa at all times in negotiating collective bargaining agreements, they were never formally advised that the individual executing the reporting forms was not authorized to bind Empire to a collective bargaining agreement. *See id.* at para. 42.

negotiated covering said subsequent period." *See* document 12 of record, Complaint, at pp. 3–4, para. 11. The Union removed that action to this court on July 8, 1987, claiming federal question jurisdiction based on section 301 of the LMRA. *See* document 1 of record. An answer to the complaint was filed on July 10, 1987, *see* document 4 of record, and, following the collapse of ongoing settlement discussions, the case was listed for trial on the court's April 5, 1988 trial calendar. *See* documents 13 and 14 of record. Local 542 filed a motion for summary judgment with a supporting brief on March 1, 1988. *See* documents 17 and 18 of record. Empire filed its answer and opposing brief on March 16, 1988. *See* documents 19 and 20 of record. The parties then informed the court that they had entered into a stipulation as to all facts necessary for the court to decide which party is entitled to judgment. *See* document 24 of record, Motion. Plaintiff then filed a brief in support of its request for an injunction and dismissal of the arbitration proceedings, together with the stipulation of facts, and defendant filed a brief in support of its position. *See* documents 25, 26, and 27 of record, respectively. Both parties then filed reply briefs on May 6, 1988. *See* documents 28 and 29 of record. This matter is now ripe for disposition.

### Discussion

In a labor dispute, "arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Thus, the issue of arbitrability is "a matter to be determined by the courts on the basis of the contract entered into by the parties." *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). In interpreting a labor contract, the Supreme Court has

instructed the federal courts to resolve ambiguities in favor of arbitration. *Lehigh Portland Cement Co. v. Cement, Lime, Gypsum, and Allied Workers Division, International Brotherhood of Boilermakers, Blacksmiths, Iron Ship Builders, Forgers and Helpers*, 849 F.2d 820, 821 (3d Cir.1988). In fact, the Court has established a "strong presumption" in favor of arbitrability. *Id.* at pp. 821–22 (citing *Nolde Brothers, Inc. v. Local No. 358, Bakery and Confectionery Workers Union*, 430 U.S. 243, 254, 97 S.Ct. 1067, 1073, 51 L.Ed.2d 300 (1977)).

Despite this strong presumption, the touchstone of this type of analysis is still the language of the contract itself. *Id.* at p. 822. Because a duty to arbitrate can be imposed only by contract, questions of contract termination must often be decided to determine whether a party is under such a duty. *Rochdale Village, Inc. v. Public Service Employees Union, Local 80*, 605 F.2d 1290, 1295 (2d Cir.1979); *International Longshoremen's Association v. Delta Steamship Lines, Inc.*, 636 F.Supp. 722, 731 (S.D.N.Y.1986), *rev'd on other grounds*, 832 F.2d 759 (2d Cir.1987). Moreover, the existence of a contract is critical in determining whether this court has jurisdiction of the present controversy. As stated by the court in *International Association of Machinists and Aerospace Workers v. Aerospace Division, UOP, Inc.*, 580 F.Supp. 641 (D.Conn.1984),

> [t]here can be no action under LMRA to enforce a non-existent contract. Jurisdiction under the LMRA extends only to breaches of contract.... Absent a contract, jurisdiction over the relations between an employer and the representative of its employees is vested in the NLRB....

*Id.* at 644 (citations omitted); *see also National Association of Broadcast Employees and Technicians v. RKO General, Inc.*, No. 84 Civ. 3889 (S.D.N.Y. April 4, 1986) [available on WESTLAW, 1986 WL 181].[3]

---

**3.** Several cases hold that when a complaint alleges the existence of a contract between the union and employer, a court has jurisdiction to

decide whether the contract does exist. *See, e.g., Baker v. Fleet Maintenance, Inc.*, 409 F.2d 551, 554 (7th Cir.1969); *International Union of*

In the instant case, defendant does not contend that plaintiff is bound by the 1986–1988 Master Agreement because plaintiff's January 8, 1988 notice of termination was defective. Defendant does not argue that the controversy it presently seeks to arbitrate arose out of the expired 1984–1986 Agreement with plaintiff. *Cf. Nolde Brothers, Inc. v. Local No. 358, Bakery and Confectionery Workers Union, supra.* Instead, defendant argues that plaintiff is bound by the terms of the 1986–1988 Master Agreement, though not a signatory to that Agreement, based on its conduct since the expiration of the 1984–1986 Agreement. *See, e.g.,* document 27 of record, at pp. 13–25. The court finds this argument to be without merit.

The fact that plaintiff continued to employ union members, make fringe benefit contributions, and check off union dues is clearly not dispositive. *See, e.g., O'Connor Company, Inc. v. Carpenters Local Union No. 1408 of the United Brotherhood of Carpenters & Joiners of America, AFL–CIO,* 702 F.2d 824, 825–826 (9th Cir.1983) (payment of increased wages and fringe benefits and hiring of carpenters from union hiring hall following complete and unequivocal termination of agreement does not indicate consent by company to be bound by new agreement), *aff'g,* 534 F.Supp. 484, 485–486 (N.D.Cal.1982) ("Plaintiff unequivocally informed defendants that it desired to terminate their collective bargaining agreement effective June 15, 1980. In light of this clear expression, it cannot be concluded that plaintiff's actions subsequent to June 15, 1980, were indicative of an intention to be bound by the 1980–1983 Agreement"); *Seymour v. Coughlin Co.,* 609 F.2d 346, 351–352 (9th Cir.1979), *cert. denied,* 446 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 816 (1980); *Procter & Gamble Independent Union of Port Ivory v. Procter & Gamble Manufacturing Co.,* 312 F.2d 181, 184 (2d Cir.1962),

*cert. denied,* 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963); *Cuyahoga Wrecking Corp. v. Laborers International Union of North America, Local Union # 210,* 644 F.Supp. 878, 881 (W.D.N.Y.1986); *General Warehousemen and Employees Union Local No. 636 v. J.C. Penney Co.,* 484 F.Supp. 130, 134–135 (W.D.Pa.1980) ("Even though employees continue to work under the compensation arrangements of an old contract, the court cannot imply that the entire contract was extended.... Nor are the checkoff of union dues and the settlement of minor grievances in accord with the old contract, alone, sufficient for the court to infer that the parties agreed to extend the old contract in its entirety"); *cf. Teamsters Steelhaulers Local Union No. 800 v. Artim Transportation Systems,* 555 F.Supp. 810, 814–815 (W.D.Pa.1983) (by knowingly, readily, and consistently accepting the benefits of a purported collective bargaining agreement, employer was estopped from challenging the existence or validity of that agreement). In fact, as many of the cases just cited point out, an employer is *required* to maintain the status quo and to refrain from making unilateral changes until the parties negotiate a new agreement or bargain in good faith until impasse. *See, e.g., NLRB v. Katz,* 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962); *Stone Boat Yard v. National Labor Relations Board,* 715 F.2d 441, 444 (9th Cir. 1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984); *O'Connor Company, Inc.,* 702 F.2d at 825–826; *International Association of Machinists and Aerospace Workers,* 580 F.Supp. at 644 and cases cited therein; *General Warehousemen and Employees Union Local No. 636,* 484 F.Supp. at 135. Here, the parties have stipulated that the use of the union members, reports, and payments were made pursuant to the expired 1984–1986 Agreement "which Empire continued

*Elevator Constructors v. Home Elevator Co.,* 613 F.Supp. 253, 255 (S.D.Ind.1985), *rev'd on other grounds,* 798 F.2d 222 (7th Cir.1986). The better holding would seem to be that federal courts have "jurisdiction to determine jurisdiction," *see, e.g., United States v. Powell,* 330 U.S. 238, 67 S.Ct. 742, 91 L.Ed. 868 (1947); *Page v. Schweik-*

*er,* 786 F.2d 150, 154 (3d Cir.1986); *Centra, Inc. v. Hirsch,* 606 F.Supp. 530, 532 (E.D.Pa.1985), and that the finding that no contract exists between the parties leads to the conclusion that this court lacks subject matter jurisdiction over the present controversy. Under either approach, however, the result is the same.

to maintain in a good faith gesture pending further negotiations with the Union for a new Agreement." *See* document 26 of record, at para. 34. In addition, Empire refused to forward annuity fund contributions called for in the 1986–1988 Master Agreement on the ground that the annuity fund was not part of the expired Agreement. *See id.* at para. 32. Thus, plaintiff's continued use of union members and forwarding of fringe benefit contributions and union dues, without more, does not establish that plaintiff is bound by the 1986–1988 Master Agreement.

Defendant also argues that plaintiff is bound by the 1986–1988 Master Agreement based on the language contained in the fringe benefit reporting form completed each month by plaintiff's Office Manager. That form contained the following provision:

> The Undersigned Employer hereby agrees that the contributions enclosed with this Remittance Report are made in conformity with the provisions concerning contributions to the Funds which are contained in the Trust Agreement and the Collective Bargaining Agreement between the Union and the Operating Engineers Employer of Eastern Pennsylvania and Delaware.

*See* document 26 of record, Exhibits D; document 27 of record, at pp. 17–18.[4] Thus, defendant argues that plaintiff's Office Manager had the apparent authority to bind plaintiff to the 1986–1988 Master Agreement and that, by completing and submitting the monthly reports, the Office Manager did in fact bind plaintiff to the new Master Agreement. *See* document 27 of record, at pp. 17–25. As the court concludes that the language contained in the form is insufficient to bind plaintiff to the Master Agreement when viewed in the context of the applicable law and the history of the parties, this argument must also be rejected. *See Teamsters Steelhaulers Lo-*

cal *Union No. 800,* 555 F.Supp. at 814 (grievance form filled in and signed by employer's manager of operations was insufficient evidence to show that employer was bound as a signatory to a contract).

In order for a collective bargaining agreement to be found, all that is required is conduct manifesting an intention to be bound by the terms of an agreement. *United Paperworkers International Union, AFL–CIO v. Wells Badger Industries, Inc.,* 835 F.2d 701, 703–704 (7th Cir.1987). As stated by this court in *Wilkes Barre Printing Pressmen and Assistants' Union, No. 137 v. Great Northern Press,* 522 F.Supp. 106 (M.D.Pa.1981) (Nealon, C.J.),

> labor agreements are governed by the "objective theory" of contracts. In other words, the central inquiry for the court is whether the actual conduct of [the parties] would have manifested offer and acceptance to a reasonable observer, regardless of the subjective intent of the parties.

*Id.* at 111. Here, the actual conduct of the parties clearly establishes that there is no agreement that presently binds both parties in the present action.

As early as 1984, Empire notified the Union that it did not wish to be bound by any Master Agreement. *See* document 26 of record, at para. 13. Because that notice was not in writing, however, the parties negotiated a new Agreement to cover the period of 1984–1986. *Id.* at paras. 14–15. Prior to the expiration of that Agreement, Empire again notified the Union that it did not intend to be bound by any Master Agreement and that it would negotiate an individual contract with Local 542. *Id.* at para. 17 and Exhibit C. Empire never deviated from that decision to terminate. The parties met on four occasions—July 20, November 20, November 25, and December 8, 1986—to negotiate a new Agreement. *Id.* at para. 23. While Empire continued to comply with the ex-

---

**4.** Defendant also relies on similar phrases contained in the documents establishing the various fringe benefit plans. *See* document 27 of record, at pp. 18–19. The parties attached to their Stipulation of Facts copies of the reporting forms submitted to the Union. In the lower left hand corner, the forms bear the date "April 1984." *See* document 26 of record, Exhibits E–1—E–11. For purposes of comparison, the annuity fund reporting form bears the date "May 1986." *See id.,* Exhibit F; *see also supra* at n. 1.

pired 1984–1986 Agreement, it did so as a good faith gesture pending the negotiation of a new Agreement. *Id.* at para. 34. The fact that several of the provisions contained in the 1986–1988 Master Agreement were identical to provisions contained in the expired Agreement does not make Empire's good faith continuation of the latter a ratification of the former. In fact, Empire refused to comply with the annuity fund provisions of the Master Agreement on the ground that the expired Agreement did not contain similar provisions. *See id.* at para. 32. Thus, there is no evidence in the record that would support a finding that Empire is bound by the 1986–1988 Master Agreement.

■ As stated previously, the existence of a collective bargaining agreement between the parties to this action is critical to this court's jurisdiction. *See* 29 U.S.C. section 185; *supra* at pp. 1560–61. The 1984–1986 Agreement between the parties has expired. The court has concluded that Empire is not bound by the 1986–1988 Master Agreement, which means, of course, that it is not required to submit the dispute to arbitration. This action will therefore be dismissed for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).

An appropriate Order will enter.